UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUSAN MATTHEWS,

      Plaintiff,

v.

CITY OF NEW YORK, et al.,

      Defendants.

23 Civ. 3959 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

  Plaintiff Susan Matthews, who is appearing *pro se*, brings age-, race-, and color-based employment discrimination, retaliation, and hostile work environment claims against the City of New York and Individual Defendant Inspector Paul Rasa ("Inspector Rasa")[1] (together, "Defendants") under the Age Discrimination in Employment Act of 1967 ("ADEA")[2]; Title VII of the Civil Rights Act of 1964 ("Title VII")[3]; the New York State Human Rights Law ("NYSHRL")[4]; and the New York City Human Rights Law ("NYCHRL").[5]  Before the Court is Defendants' motion to dismiss Plaintiff's claims.[6]  For the reasons discussed herein, Defendants' motion to dismiss is **GRANTED**.

---

[1] *See* Compl. 3-4, ECF No. 1.

[2] 29 U.S.C. § 623.

[3] 42 U.S.C. § 2000e.

[4] N.Y. Exec. Law § 290.

[5] N.Y.C. Admin. Code § 8-101

[6] *See* ECF No. 15.

## BACKGROUND

Where a party proceeds *pro se*, courts may consider facts raised by a plaintiff's original Complaint and Opposition, in addition to facts alleged in the plaintiff's operative pleadings.[7] Because a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," the Court also considers attachments to Plaintiff's pleadings.[8] Thus, for purposes of adjudicating Defendants' motion to dismiss, the facts stated below are drawn from the Complaint, Amended Complaint, and attachments—as supplemented by the Opposition—and are assumed to be true, with all reasonable inferences drawn in favor of Plaintiff.[9]

### A. Factual Background[10]

Plaintiff Susan Matthews ("Plaintiff") was hired in 2007 by the New York Police Department ("NYPD") as a Staff Analyst; she is a white woman who was around 64 years old

---

[7] *See Taylor v. Quayyum*, No. 16 Civ. 1143, 2021 WL 6065743, at *2 (S.D.N.Y. Dec. 21, 2021) ("Because Plaintiff is proceeding *pro se*, the Court will consider the Complaint, [and Amended Complaint] . . . together as the operative pleading."); *Lewis v. Weiss*, No. 12 Civ. 7242, 2016 WL 1718251, at *3 (S.D.N.Y. Apr. 27, 2016) ("[W]hile Plaintiff was instructed that any amended complaint would supplant, rather than supplement, her prior complaint, the Court will consider the allegations and attachments to her amended complaint as well as those [of] her second amended complaint."); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (considering additional facts alleged in a *pro se* plaintiff's opposition brief as supplementing the pleadings); *Kiss v. Torres*, No. 21 Civ. 10391, 2024 WL 1210941, at *2 (S.D.N.Y. Mar. 19, 2024) ("Because Plaintiff is proceeding pro se, the Court will [] consider the factual assertions raised for the first time in his Opposition briefs to the extent they are consistent with the Amended Complaint.").

[8] *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

[9] *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

[10] As a preliminary matter, the Court notes that while it endeavored to ensure accuracy in its presentation of Plaintiff's allegations, Ms. Matthews' hand-written submissions were often difficult to read. Many of her typed addenda were submitted in the form of a series of emails that were difficult to follow due to spelling and grammatical errors and a general lack of organization.

during the events underlying her claims.[11]  She previously worked for the City of New York's Human Resources Administration and has a master's degree in urban studies.[12]

In February 2021, a Black colleague chastised Plaintiff at a virtual staff meeting for taking three sick days off work, which Plaintiff alleges was part of a "scheme against white [employees]."[13]  Plaintiff was also asked to take on tasks that she did not wish to do: "a sup[ervisor] told me to do odd jobs such as make [hiring] packets for clerical black st[a]ff, like i was [the] slave."[14]

In 2021 or 2022, Plaintiff passed the Associate Staff Analyst promotion exam.[15]  Sometime thereafter, she learned that three women of color in her unit were promoted, but she and a white male colleague were not.[16]  She alleges that, while Plaintiff and other white colleagues were not promoted, the NYPD promoted people of color who had not taken the promotion exam, and that it "secretly manufacture[d]" job titles, like "community coordinator," in order "to give minorities a higher salary."[17]  Plaintiff further alleges that "there were [] salary increases given periodically to [B]lack and minority staff in clerical titles just to placate them and because they are hostile."[18]

After unsuccessfully filing complaints with the NYPD Equal Employment Opportunity office, Plaintiff filed a charge of discrimination against Defendants with the federal Equal

---

[11] Compl. 16, 54.

[12] *Id*. at 38.

[13] *Id.* at 25-26, 40; Am. Compl. 9-10, ECF No. 20.

[14] Am. Compl. 10.

[15] Compl. 17, 24.

[16] *Id.* at 18, 25.

[17] Compl. 17, 25; Am. Compl. 9, 11, 12, 18; ECF No. 35 at 3.

[18] Am. Compl. 12; *see also* Compl. 40 (alleging that a Black colleague "was promoted because she was so angry").

Employment Opportunity Commission ("EEOC"), in November 2021.[19]  On March 28, 2023, the EEOC sent Plaintiff a Notice of Right to Sue.[20]

    Plaintiff alleges that, upon learning about her EEOC claim in or around November 2021, the manager of her unit, Inspector Rasa, became "angry and nasty," and called Plaintiff into his office for a meeting with three other senior staff members.[21]  During or immediately after that meeting, Inspector Rasa ordered the removal of barriers that had been raised in an open area in front of Plaintiff's desk to protect employees from the spread of COVID-19.[22]  Plaintiff alleges that the removal of the barriers was intended to intimidate her, given her age and susceptibility to COVID-19.[23]

    On January 4, 2022, Plaintiff sent an email to Inspector Rasa complaining about discrimination.[24]  In response, Inspector Rasa stated, "Susan, I'm ordering you to no longer send me emails[.] . . . You have direct reports & all your concerns should be sent to them[.]"[25]

---

[19] Am. Compl. 11; *see also* Compl. 6 (noting that the charge was filed on "11/21"); Am. Compl. 11 ("Note I filed the complaint Nov 2021").  Note that there does not appear to be a copy of the original EEOC complaint included in materials submitted to the Court and the exact date of application to the EEOC is unclear.  Defendants suggest that the date may be November 22, 2021, Def.'s Mem. of L. in Supp. of Mot. to Dismiss Am. Comp. ("Def.'s Br. 2") 13, ECF No. 29.  In addition, on November 22, 2021, Plaintiff filed a Charge of Discrimination against Defendants with the New York State Division of Human Rights.  Compl. 54-55.

[20] *See* Compl. 8.

[21] *See* Am. Compl. 7, 25; *see also* Compl. 18, 25.

[22] Am. Compl. 15, 25 (alleging that Inspector Rasa ordered the removal of barriers in front of Plaintiff's desk, which "wa[s] [an] open area [where] staff [] congregated . . . [to] chat").

[23] *See also id.* at 12 ("AFTER RECEIVING MY COMPLAINT INSP REMOVED THE BARRIERS AND COUNSELsays so what .. insp saying i don't care if yu get the virus i want to put your health at risk because i filed a eeco complaint nd im not allowed to do that[.]")

[24] Am. Compl. 20.

[25] *Id.*

4

Between December 2022 and January 2023, Plaintiff's male colleague, referred to as "Lieutenant Mike," followed Plaintiff to a reception area and stared at Plaintiff on four occasions.[26] This individual was a direct report of Inspector Rasa's.[27] Lieutenant Mike also "put up his cell phone and looked like or made believe he was filming [Plaintiff,] then he turned the camera towards himself and was looking like he wrote something."[28] Plaintiff refers to these as "stalking incidents."[29] Plaintiff was "spooked by these gestures," which left her with "no choice but to retire" and "give up a possible and probable promotion."[30] On February 1, 2023, Plaintiff retired from the NYPD to "protect her pension."[31] After she retired, on February 16, 2023, Plaintiff reported the "stalking incidents" internally to "iab@nypd.org."[32]

### B. Procedural History

On May 11, 2023, Plaintiff commenced this action by filing her complaint.[33] On August 21, 2023, Defendants filed the first motion to dismiss.[34] On September 18, 2023, Plaintiff filed a declaration that appeared to be an opposition to Defendants' motion.[35] However, on October 12, 2023, Plaintiff clarified that the "amended complaint was on 9/18/23. It was not opposed [to] a

---

[26] *Id.*; *see also* Pl.'s Letter in Resp. to Def.'s Am. Mot. to Dismiss ("Pl.'s Opp'n Letter") 5, 11, ECF 35.

[27] Am. Compl. 8.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] Compl. 42; *see also* Am. Compl. 8.

[32] Am. Compl. 8; *see also* Pl.'s Decl. in Opp'n to Def.'s Am. Mot. to Dismiss ("Pl.'s Opp'n Decl.") 25, ECF No. 32.

[33] *See generally* Compl.

[34] *See* ECF No. 15.

[35] *See* ECF No. 20. On October 11, 2023, the case was reassigned to the undersigned. *See* ECF No. 24.

motion to dismiss."[36]  Based on Plaintiff's representation, on October 13, 2023, the Court construed the declaration at ECF No. 20 as Plaintiff's amended complaint and terminated the first motion to dismiss as moot.[37]  On November 2, 2023, Defendants filed a renewed motion to dismiss the amended complaint.[38]

On November 30, 2023, Plaintiff filed an opposition to the renewed motion to dismiss.[39]  On December 28, 2023, Plaintiff filed an "Amended Opposition to Letter and Motion to Dismiss."[40]  In her amended opposition, Plaintiff clarified, among other things, that she had not intended to allege a sex discrimination claim.[41]  On January 4, 2023, the Court issued an order stating that it would consider Plaintiff's Amended Opposition and noting that no further amendments would be accepted.[42]  Defendants filed a second letter noting that Plaintiff had abandoned her claim of sex discrimination.[43]

---

[36] *See* ECF No. 26 at 3.

[37] *See* ECF No. 27.

[38] *See* ECF No. 28.

[39] *See* ECF No. 32.

[40] *See* Pl.'s Opp'n Letter.

[41] *See id.* at 2 ("I MENTION IS FOCUSED ON RACE /COLOR AND AGE / AND I MENTION CIVIL RIGHTS ACT IN CONTEXT  OF ALL COVERED CATEGORIES , HOWEVER READING THOUGH MY COMPLAINT I FOCUSED SOLELY ON RACE/COLOR  AND AGE AS DISCRIMINATING FACTORS.").  Based on this representation, the Court construes Plaintiff's pleadings as raising only race-, color-, and age-based discrimination claims.

[42] ECF No. 36.

[43] ECF No. 37 at 2.

**LEGAL STANDARDS**

A. **Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[44] A complaint need not contain "detailed factual allegations," but it must offer something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[45] A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[46] In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff."[47] However, the court must disregard any "conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'"[48]

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."[49] "Nonetheless, a *pro se* complaint must state a plausible claim for relief."[50] In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."[51]

---

[44] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[46] *Id.* (citing *Twombly*, 550 U.S. at 556).

[47] *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[48] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (quoting *Twombly*, 550 U.S. at 555).

[49] *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

[50] *Id.*; *accord Walker v. Kosann*, No. 23 Civ. 4409, 2024 WL 922642, at *7 (S.D.N.Y. Feb. 16, 2024), *report and recommendation adopted*, 23 Civ. 4409, 2024 WL 923314 (S.D.N.Y. Mar. 4, 2024) ("[E]ven *pro se* plaintiffs' claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level.").

[51] *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

B. **Leave to Amend**

"Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile."[52] "Where the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'"[53]

## DISCUSSION

A. **Federal Claims**

   1. **Employment Discrimination**

Plaintiff brings age-, race-, and color-based employment discrimination claims under the ADEA and Title VII. For the reasons discussed herein, her federal claims are dismissed.

   a. **Legal Standards**

The ADEA states, it is "unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age."[54] Title VII "prohibits employment discrimination on the basis of race, color, religion, sex, or national origin."[55] To allege a prima facie case of discrimination under either federal statute, a plaintiff must demonstrate that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment

---

[52] *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

[53] *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 548-49 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)).

[54] 29 U.S.C. § 623(a)(1).

[55] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination[.]'"[56]

Where, as here, a plaintiff does not purport to present "direct evidence of discrimination," her complaint must instead "be plausibly supported by facts alleged in the complaint [] that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."[57] To allege an adverse employment action, a plaintiff must assert "some harm respecting an identifiable term or condition of employment," but that harm need not be "significant."[58] A minimal inference of discriminatory intent can arise from a variety of circumstances, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."[59]

### b. Application

Beginning with the ADEA claim, no party disputes that Plaintiff was around 64 years of age during the relevant period and qualified for her job. Plaintiff alleges that she was not promoted despite having passed a promotion exam; that she had to attend a meeting and was

---

[56] *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (noting further that "[t]he framework for establishing a prima facie case of discrimination under Title VII . . . also applies to ADEA claims").

[57] *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

[58] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

[59] *Littlejohn*, 795 F.3d at 312.

stripped of COVID-19 barriers in retaliation for her complaints about discrimination; and that she retired to protect herself and her pension.[60]

Assuming for the sake of argument that she alleges at least one adverse employment action, Plaintiff nonetheless fails to plausibly plead any fact giving rise to an inference of age discrimination—that is, she does not plead facts sufficient to show that any adverse actions taken against her were *because* of age. She does not, for example, provide any specific details on how she was allegedly treated differently from any younger employees who were otherwise similarly situated to her. While she alleges that she was forced to attend a meeting with Inspector Rasa after she filed her EEOC complaint, she does not explain what occurred during that meeting and how it was discriminatory. She does not, for instance, allege that Defendants made discriminatory remarks related to her age. She does not allege that after she retired, she was replaced by a younger candidate. She offers no details about the promotion she believes she should have received, and no details about the individual who ultimately received it. Without more specificity, Plaintiff's pleadings do not support an inference that Defendants discriminated against her because of her age.[61] Accordingly, Plaintiff's ADEA claim is properly dismissed.

Plaintiff's Title VII claim fares no better. Plaintiff claims that she experienced "reverse discrimination" for being white while she was employed by the NYPD.[62] Specifically, the NYPD promoted and raised the salaries of colleagues of color while "never giving most white

---

[60] *See* Compl. 5, 18, 20, 22.

[61] *See, e.g.*, *Deylii v. Novartis Pharms. Corp.*, No. 13 Civ. 6669 NSR, 2014 WL 2757470, at *8 (S.D.N.Y. June 16, 2014) (non-specific allegations failed to amount to "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 180, 182 (E.D.N.Y. 2014) (dismissing *pro se* age discrimination claim for failure to state facts in support of a causal connection between any adverse action and plaintiff's age), *aff'd*, 594 F. App'x 53 (2d Cir. 2015); *Adams v. N. Y. State Educ. Dep't,* 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (same).

[62] Am. Compl. 1, 19.

employees any promotion or raise,"[63] and maintained "two sets of rules" for Black versus white employees.[64] These general and conclusory allegations are insufficient to give rise to an inference of race- or color-based discrimination. Though she states that non-white individuals were promoted over her, Plaintiff fails to allege any relevant fact about those promotions, such as when the promotions occurred, what qualities and qualifications the promoted individuals had or did not have, and how the promoted individuals were otherwise similarly situated to her. While she states that different rules were applied to Black and White employees, she does not state what those purported rules were.[65] "[E]ven *pro se* plaintiffs' claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level."[66] Here, Plaintiff raises no fact in support of her conclusory assertion that she perceived that various unspecified actions by her employers occurred because of her race or color. Accordingly, the Court cannot conclude that Plaintiff has raised anything "more than an unadorned, the-defendant-unlawfully-harmed-me accusation,"[67] and Plaintiff's Title VII employment discrimination claim is therefore properly dismissed.

### 2. Retaliation

Plaintiff brings age-, race-, and color-based retaliation claims under the ADEA and Title VII. For the reasons discussed herein, her claims are dismissed.

---

[63] Compl. 18.

[64] Pl.'s Opp'n Letter 4.

[65] *See generally* Compl; Am Compl.

[66] *Walker*, 2024 WL 922642, at *7.

[67] *Iqbal*, 556 U.S. at 678.

### a. Legal Standards

To plausibly allege an ADEA or Title VII retaliation claim, "a plaintiff must show: (i) [she] engaged in protected activity; (ii) the defendant was aware of that activity; (iii) [the plaintiff] suffered a[n] . . . adverse [employment] action; and (iv) there was a causal connection between the protected activity and that adverse action."[68]  "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. . . .  It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."[69]

### b. Application

No party disputes that Plaintiff engaged in a protected activity when she filed an EEOC complaint, and that Defendants were aware of that activity.  Plaintiff's federal retaliation claim nonetheless fails because she does not allege that she suffered an adverse employment action *as a result* of her protected activity.  In the context of a Title VII or ADEA retaliation claim, an adverse employment action is an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[70]  Plaintiff alleges that the following actions occurred in alleged retaliation against her for filing the EEOC complaint in or around November 2021: Inspector Rasa held a meeting with Plaintiff and ordered

---

[68] *Livingston v. City of New York*, 563 F. Supp. 3d 201, 245 (S.D.N.Y. 2021) (Title VII); *Bohnet v. Valley Stream Union Free Sch. Dist.* 13, 30 F. Supp. 3d 174, 182 (E.D.N.Y. 2014) (reciting the same standard in assessing ADEA claims), *aff'd*, 594 F. App'x 53 (2d Cir. 2015).

[69] *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015).

[70] *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); *see also Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (defining an adverse employment action in the retaliation context, as opposed to in the employment discrimination context, as one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

the removal of COVID-19 barriers that covered an open area in front of Plaintiff's desk;[71] Plaintiff was followed into a reception area and stared at by Lieutenant Mike;[72] and Plaintiff retired.[73] The Court addresses each allegation in turn below.

First, Plaintiff fails to explain how a meeting with Inspector Rasa could dissuade a reasonable worker from making or supporting a charge of discrimination. Plaintiff notably does not claim that Inspector Rasa made any reference to Plaintiff's discrimination complaint during their meeting. As for the removal of COVID-19 barriers from an open area in front of Plaintiff's desk, Plaintiff does not allege that the barriers were removed from the area in front of her desk alone rather than from open spaces in the office more generally, such that the policy had been "applied to her and not others."[74] In fact, she alleges that Inspector Rasa ordered the removal of barriers from an "open area" where staff generally "congregated" to "chat."[75] It is notable also that the removal of the barriers occurred in November 2021, when the COVID-19 vaccine was widely available and the virus was "both less prevalent and easier to protect against than at the height of the pandemic."[76] On these facts, a rational factfinder could not infer that a reasonable employee in Plaintiff's position could be dissuaded from making a charge of discrimination.

---

[71] Am. Compl. 25 (alleging that Inspector Rasa announced in a meeting that he would be removing COVID-19 barriers, then subsequently did).

[72] *Id.* 8 (describing incidents in which Plaintiff was stared at by a lieutenant).

[73] *Id.* (stating that Plaintiff retired because she "was frightened" and wished "to protect [her]self").

[74] *See Carr v. N. Y. C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023) (rejecting a Title VII and ADEA retaliation claim where "the alleged retaliatory actions were the result of generally applicable workplace policies and [the plaintiff had] not adduced evidence that these policies were applied to her and not others").

[75] Am. Compl. 25.

[76] *United States v. Johnson*, 671 F. Supp. 3d 265, 273 (E.D.N.Y. 2023).

13

Next, with respect to the incident in which non-party Lieutenant Mike stared at her, Plaintiff does not allege that Lieutenant Mike knew about the existence of her EEOC complaint, which would be necessary to infer a causal link between the complaint and the incident in question.[77] Even if she had alleged that Lieutenant Mike knew of her discrimination complaint, Plaintiff fails to allege any facts demonstrating that Lieutenant Mike's presence in a shared reception space and apparent staring was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[78]

Finally, to the extent Plaintiff claims that she was constructively discharged when she retired to protect her pension,[79] that claim also fails. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily."[80] The plaintiff must allege facts demonstrating that her "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."[81] Here, Plaintiff alleges only that she "was frightened" to see Lieutenant Mike stare at her several times in a reception area, one time with his phone in hand, and that the "incidents scared [her] enough" that she "was forced to leave" her employment.[82] Again, Plaintiff does not allege that Lieutenant Mike knew about her EEOC complaint. Even if she had so alleged, "Plaintiff does not allege that Defendant[s] *intentionally* created an intolerable work atmosphere;

---

[77] *See generally* Compl.; Am. Compl.; Pl. Opp'n Letter.

[78] *Kessler*, 461 F.3d at 209.

[79] Am. Compl. 8 ("I Felt I was forced to leave to protect my pension.").

[80] *Gray v. Minnesota Mining & Mfg. Co.*, No. 23 Civ. 1069, 2024 WL 1879745, at *4 (D. Conn. Apr. 30, 2024) (citing *Chertkova v. Conn. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).

[81] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

[82] Am. Compl. 8.

rather, it was Plaintiff's own subjective feeling . . . that led her to quit her employment."[83] Even construing these facts liberally, the Court cannot conclude that a factfinder could plausibly surmise that Plaintiff's working conditions were so difficult or unpleasant that a reasonable person in Plaintiff's shoes would have felt forced to resign.[84]

Given Plaintiff's failure to allege her prima facie case, Plaintiff's ADEA and Title VII retaliation claims are properly dismissed.

### 3. Hostile Work Environment

Plaintiff brings age-, race-, and color-based hostile work environment claims under the ADEA and Title VII. For the reasons discussed herein, her claims are dismissed.

#### a. Legal Standards

"The standards for evaluating hostile work environment claims are identical under Title VII [and] the ADEA."[85] Under each, a plaintiff must first demonstrate "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[86] To do so, a plaintiff must plead "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be

---

[83] *Gray*, 2024 WL 1879745, at *4.

[84] *See id.* (dismissing a constructive discharge claim in similar circumstances); *see also Hayles v. Advanced Travel Mgmt. Corp.*, No. 1 Civ. 10017, 2004 WL 26548, at *18 (S.D.N.Y. Jan. 5, 2004) (concluding that the "[p]laintiff has failed to prove that her working conditions would have led a reasonable person to consider herself constructively terminated," where she failed to allege any non-conclusory fact in support of that assertion).

[85] *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 181 (E.D.N.Y. 2017).

[86] *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

abusive."[87]  "Factors that may be considered include: [1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance."[88]  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."[89]

Next, it is "axiomatic" that the plaintiff must demonstrate that she was subjected to the abusive working environment "*because of* [her] protected characteristic[s]."[90]  Courts must consider the totality of the employment circumstances when making this determination.[91]

### b. Application

Even liberally construing Plaintiff's pleadings, the Court concludes that "[n]o reasonable juror could find that [Plaintiff] was subjected to conduct that was sufficiently severe or pervasive, either in isolation or when viewed as a whole, to create a hostile work environment."[92]  Plaintiff therefore fails at the threshold to allege a federal hostile work environment claim.

Purportedly in support of her claim, Plaintiff appears to rely on the same allegations comprising her age-, race-, and color-based discrimination claims.  Once again, her claim is insufficient as a matter of law.  First, notwithstanding her own subjective feelings about

---

[87] *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Littlejohn*, 795 F.3d at 321).

[88] *Doyle v. Am. Glory Rest. Corp.*, No. 23 Civ. 7624, 2024 WL 1466161, at *5 (S.D.N.Y. Apr. 4, 2024).

[89] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

[90] *Lloyd v. Holder*, No. 11 Civ. 3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added)); *see also Rivera*, 743 F.3d at 20.

[91] *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003).

[92] *Davis-Molinia v. Port Auth. of N. Y. & N. J.*, No. 8 Civ. 7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

Defendants' actions, such as being stared at a handful of times by Lieutenant Mike, Plaintiff fails to point to conduct by Defendants that was objectively so "severe or pervasive" that reasonable factfinders might find that conduct hostile or abusive.[93] And for the reasons discussed in previous sections, Plaintiff's pleadings fail to set forth a basis to support the assertion that any complained-of act was plausibly motivated by Plaintiff's membership in any protected class. Accordingly, Plaintiff's federal hostile work environment claims are dismissed.[94]

### B. State and City Claims

Plaintiff's federal claims are dismissed, and the Court declines to exercise supplemental jurisdiction over her remaining claims.[95] Accordingly, all claims raised by Plaintiff under state and city law are dismissed, without prejudice to refiling in state court. To be clear, and without expressing an opinion one way or the other as to the ultimate merits of her claims, the Court's Order dismissing this case does not prohibit Plaintiff from re-filing her claims under the NYSHRL or NYCHRL in state court.

---

[93] *See Littlejohn*, 795 F.3d at 321 (concluding that general hostility directed at the plaintiff was insufficient to allege a hostile work environment under Title VII).

[94] Defendants additionally allege that Defendant Rasa is not liable under the ADEA and that at least some of Plaintiff's claims are time-barred. *See* Def.'s Br. 11-12, 13-14. Because the Court dismisses Plaintiff's federal claims for failure to state a claim, it does not address alternative grounds for dismissal.

[95] *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017) (Calabresi, J., concurring) ("[A]fter all federal claims have been dismissed, the default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so.").

## C. Leave to Amend

Plaintiff does not request leave to amend her pleadings.  However, a *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[96]  Nonetheless, a district court may deny leave to amend "when amendment would be futile."[97]  Here, Plaintiff has already amended her Complaint once.[98]  "[R]epeated failure to cure deficiencies" weighs against granting further leave to amend.[99]  Moreover, having stated no non-conclusory allegation in support of her federal claims, Plaintiff has not alleged facts that give the Court any indication that further amendment would cure the deficiencies with her pleadings.[100]  The Court in its discretion concludes that amendment would be futile here, where the problems with Plaintiff's federal claims are substantive, and not merely the result of "inartfully pleaded" allegations.[101]  Accordingly, leave to amend is denied.

---

[96] *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

[97] *Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020).

[98] *See* ECF No. 26 at 3 (clarifying that Plaintiff had filed an "amended complaint . . . on 9/18/23 [at ECF No. 20]").  Plaintiff did not object when the Court stated that it would construe the declaration at ECF No. 20 as Plaintiff's amended complaint based on Plaintiff's representation.  *See* ECF No. 27.

[99] *See Vasquez v. Reece Sch.*, No. 22 Civ. 5986, 2024 WL 497433, at *2 (S.D.N.Y. Feb. 8, 2024).

[100] *See id.*

[101] *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 548-49; *see also Hodge v. N.Y. Unemployment*, No. 24 Civ. 1631, 2024 WL 1513643, at *2 (E.D.N.Y. Apr. 8, 2024) (denying a *pro se* plaintiff leave to amend where the plaintiff failed to "assert a cause of action or articulate what the defendant is alleged to have done" in violation of any law).

## CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss Plaintiff's federal claims is **GRANTED**, with prejudice. Plaintiff's state and city claims are dismissed without prejudice to refiling in state court.

The Clerk of Court is respectfully requested to terminate **ECF No. 15** and to close the case.

SO ORDERED.

Dated: September 10, 2024
New York, New York

DALE E. HO
United States District Judge